FILED

2010 Sep-30  PM 01:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

AMANDA L. GREEN,                    ]
                                    ]
        Plaintiff,                  ]
                                    ]
    vs.                             ]        3:09-CV-0882-LSC
                                    ]
MICHAEL J. ASTRUE,                  ]
Commissioner,                       ]
Social Security Administration,     ]
                                    ]
        Defendant.                  ]

MEMORANDUM OF OPINION

I.    Introduction.

    Plaintiff, Amanda Green, appeals from the decision of the
Commissioner of the Social Security Administration ("Commissioner")
denying her applications for a period of disability and disability insurance
benefits ("DIB").    Ms. Green timely pursued and exhausted her
administrative remedies, and the decision of the Commissioner is ripe for
review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

    Ms. Green was thirty-six years old at the time of the Administrative
Law Judge's ("ALJ's") decision, and she has a college education.  (Tr. at 34,

37.)  Her past work experience includes employment as a director of social

services for National Health Care, a mental health technician, and a store

clerk and cashier.  *Id.* at 39-41.  Ms. Green claims that she became disabled

on November 16, 2006[1], due to pain and functional limitations associated

with interstitial cystitis.  *Id.* at 41-42, Doc. 9 at 9.

When evaluating the disability of individuals over the age of eighteen,

the regulations prescribe a five-step sequential evaluation process.  *See* 20

C.F.R. § 404.1520; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir.

2001).  The first step requires a determination of whether the claimant is

"doing substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If he or

she is, the claimant is not disabled and the evaluation stops.  *Id.*  If he or

she is not, the Commissioner next considers the effect of all of the physical

and mental impairments combined.  20 C.F.R. § 404.1520(a)(4)(ii).  These

impairments must be severe and must meet the durational requirements

before a claimant will be found to be disabled.  *Id.*  The decision depends

---

[1]Plaintiff's original alleged onset date was June 29, 2006.  (Tr. at 9.)  However, at a hearing held May 29, 2008, Plaintiff filed a request to amend her alleged onset date to November 16, 2006.  *Id.*

on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. § 404.1520(a)(4)(ii).  Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  (*Id.*)  If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. § 404.1520(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.*  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in

order to determine if he or she can do other work.   20 C.F.R. §
404.1520(a)(4)(v).  If the claimant can do other work, the claimant is not
disabled.  *Id.*

Applying the sequential evaluation process, the ALJ found that Ms.
Green "meets the insured status requirements of the Social Security Act
through December 31, 2011." (Tr. at 11.)  He further determined that Ms.
Green had not engaged in substantial gainful activity since the alleged onset
of her disability.  *Id.*  According to the ALJ, Plaintiff has the "following
severe combination of impairments: interstitial cystitis."  *Id.*  However, he
found that this impairment neither met nor medically equaled any of the
listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  *Id.*  The ALJ
determined that Ms. Green had the residual functional capacity "as set forth
in the Medical Source Opinion (Physical) of Dr. Ricky Irons, dated February
8, 2008."  *Id.* at 12.  Dr. Irons concluded Plaintiff's RFC to be as follows:
in an eight-hour workday, can stand for a total of two hours, walk for a total
of one-half hour, and sit for a total of six hours; occasionally lift and carry
up to 10 pounds; push and pull with her extremities; climb, balance, reach
overhead; work in wetness and humidity; work in exposure to pulmonary

irritants; work in proximity to moving mechanical parts, and drive automotive equipment; frequently handle, finger, and feel; and found her restricted to no stooping, kneeling, crouching, crawling, and working around temperature extremes, vibration, and high exposed places. *Id.* at 12, 274-75.

The ALJ then determined Plaintiff is "capable of performing past relevant work as a social services worker and as a mental health technician. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (Tr. at 17.) Accordingly, the ALJ entered a finding that Plaintiff "has not been under a disability, as defined in the Social Security Act, from November 6, 2006, through the date of this decision." *Id.* at 18.

II.     Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales,* 402 U.S. 389, 390, 401

(1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id.*  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Robinson v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards

is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion.

Ms. Green alleges that the ALJ's decision should be reversed because it is not supported by substantial evidence and applicable law for two reasons.  (Doc. 8 at 3-13.)  First, Plaintiff claims the ALJ "failed to properly articulate good cause for according no weight to Dr. Irons' opinion of May 2008."  *Id*. at 3.  Second, Plaintiff contends "the ALJ failed to properly evaluate the credibility of the Plaintiff's complaints of pain consistent with the Eleventh Circuit Pain Standard."  *Id*. at 6.

A.    Treating Physician's Opinion.

Plaintiff claims the ALJ erred in "only giving significant weight to one of Dr. Irons' opinions [dated February 8, 2008], and failed to show good cause for giving no weight to the May 2008 opinion."  (Doc. 8 at 4.)  A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary."  *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal

quotations omitted).  The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source.  *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but

are, instead, opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."   20 C.F.R. §§ 404.1527(e), 416.927(d).  The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or his] condition."  *Lewis*, 125 F.3d at 1440.  Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity.  *See, e.g.,* 20 C.F.R. § 404.1546(c).

In the instant case, the ALJ gave "significant weight" to Dr. Irons's Medical Source Opinion Form ("MSO"), dated February 8, 2008, because he found it to be "most consistent with the record as a whole and [] supported by the objective clinical evidence of record."  (Tr. at 17.)  As previously noted, the ALJ based Plaintiff's RFC on Dr. Irons's February 8, 2008 MSO.[2]  *Id*. at 12, 274-75.  The ALJ further noted that Dr. Irons based the limitations on Claimant's own subjective complaints.  *Id*. at 12.  Additionally, the ALJ

---

[2]*See supra* pp. 4-5.

stated that "[t]he restrictions given by Dr. Irons give the claimant the benefit of all reasonable doubt regarding the pain she experiences from interstitial cystitis, considering that no other treating physician has recommended any different restrictions for the claimant" and that he gave "great weight" to this opinion because it "is more favorable to work-related limitations and is supported by the evidence."[3] *Id.*

While the ALJ gave great weight to Dr. Irons's February 8, 2008 MSO, he gave "no weight" to Dr. Irons's May 30, 2008 MSO.  (Tr. at 17.)  The ALJ discussed several reasons for his conclusion.  In the May 2008 MSO, Dr. Irons again relied primarily on Claimant's own statements concerning her symptoms and pain, yet, based on records from Plaintiff's urologist and her physiotherapy, the ALJ questioned Claimant's reliability.  (*See infra* pp.14-16.)  The ALJ also noted that Dr. Irons was not able to review the other medical reports before the ALJ, which the ALJ found to be more consistent with the February 2008 MSO and with the ALJ's ultimate conclusion.  The ALJ found the May 2008 MSO to "contrast sharply with other objective

---

[3]The entirety of the medical evidence of record considered by the ALJ will be discussed more fully below when the Court addresses Claimant's second argument.

evidence and the claimant's own testimony one day earlier." *Id*.   For example, while Claimant reported that she was able to groom, dress, drive, and cook, activities demonstrating good use of her extremities, Dr. Irons found she could "never use either her upper or lower extremities for pushing/pulling activity." *Id*. at 17, 290.

Finally, the ALJ determined that "the possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another." He also noted that "patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests and avoid unnecessary doctor/patient tension." *Id*. While the ALJ recognized that it would be difficult to confirm such suspicions, "they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case." *Id*.

Despite the ALJ's conclusion, the evidence of record appears to actually support Dr. Iron's May 2008 MSO.  As can be seen from the discussion below (*see infra* pp. 16-19), the records of Dr. Timothy Ness, a

treating physician, indicate Plaintiff underwent nerve blocks in February 2008 and in May 2008, and indicate Plaintiff was suffering from severe and substantial pain.  (Tr. at 283-85, 288-89.)   Based on the full record of evidence and the discussion of it below, this Court remands the present case to the ALJ so that he may properly reconcile the February 2008 MSO and May 2008 MSO with the evidence of record in its entirety, and reassess the weight given to each MSO.

    B.    Subjective Complaints of Pain.

    Plaintiff next contends that the ALJ failed to properly assess Plaintiff's credibility.  (Doc. 8 at 6.)  To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

    The ALJ is permitted to discredit Claimant's subjective testimony of

pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements.").  Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562).  In *Dyer*, the Eleventh Circuit held that the ALJ properly applied the *Holt* standard when he considered the claimant's daily activities, frequency of his symptoms, and the types and dosages of his medications, to conclude that the claimant's subjective complaints were inconsistent with the medical record.  *Id*. at 1212.  "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is "not enough to enable [this Court] to conclude that [the ALJ] considered her medical condition as a whole."  *Id*. (internal quotations omitted).

In the instant case, while the ALJ found that Claimant's "medically

determinable impairments could reasonably be expected to produce the alleged symptoms", he further determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are not consistent with the residual functional capacity." (Tr. at 15.)

In discrediting Plaintiff's testimony, the ALJ gave substantial weight to the opinion of Dr. Keith Lloyd, Plaintiff's urologist. *Id.* at 14-16. Dr. Lloyd noted Plaintiff's history of interstitial cysitis. *Id.* at 14, 222-40. In 2003, Dr. Lloyd noted that a micturition study showed Plaintiff had "a decreased capacity bladder with possibly some mild motor impairment. Findings could be definitely compatible with IC." *Id.* at 237. In 2004, Dr. Lloyd noted that Plaintiff had a "dramatically good response" to cysto and hydrodistention that she had undergone in October 2003, and although her symptoms continued, Plaintiff reported in August 2004 that "[s]he is working on a new house currently. She and her husband are planning to have one more child." *Id.* at 14, 231, 233. In 2005, Dr. Lloyd performed a cystoscopy and bladder distension and noted "there were plenty of hemorrhages scattered around the bladder wall. These were judged to be moderate in

severity." *Id*. at 226.   Additionally, Plaintiff was informed of a new interstitial cystitis study, however, she elected not to go through with the procedure. *Id*. at 222-24.  In April 2006, Plaintiff reported that she quit her job, which Dr. Lloyd noted would hopefully help with her symptomatology, and in July 2006, Plaintiff reported she was using bladder instillations, which "improved her symptoms greatly" and her pain "was very comfortable and she was very pleased at this visit." *Id*. at 14, 220-22.  Finally, Plaintiff saw Dr. Lloyd in November 2006, at which time the ALJ states that she reported the bladder instillations were "providing satisfactory relief of her symptoms." *Id*. at 14.   Dr. Lloyd referred Plaintiff for pelvic floor physiotherapy and to a pain clinic.  While Dr. Lloyd recommended that she follow-up with him following physical therapy and an appointment for pain management with Dr. Ness, there are no further records from Dr. Lloyd. *Id*. at 14, 250.

Based on Dr. Lloyd's referral, Plaintiff began physiotherapy on November 27, 2006, and by her second visit on December 6, 2006, her medication had been reduced from three times a day to one time a day. (Tr. at 260.)  On January 4, 2007, in a letter to Dr. Lloyd, Plaintiff's

physiotherapist noted Plaintiff "has good days and bad days as far as her bladder is concerned, but generally speaking, more better days than worse days since beginning PT." *Id*. at 254.  By January 19, 2007, on Plaintiff's last visit of record, it was noted Plaintiff was able to walk over two miles.  *Id*. at 251.

Throughout her period of physiotherapy, Plaintiff was also treated at Kirklin Pain Treatment Center by Dr. Timothy Ness.  (Tr. at 14, 267-72, 277-89.)  Dr. Ness's first record concerning Plaintiff, dated December 15, 2006, states that physical therapy and some medicines made Plaintiff's pain better.  Further, Plaintiff informed Dr. Ness that she was getting "profound benefit" from physical therapy.   Dr. Ness determined continuing with physical therapy would be the best option.  He gave Plaintiff a prescription for Lortab, which had also been frequently prescribed by Dr. Lloyd.  *Id*. at 14, 223-24, 230, 233, 236, 238, 271, 277.  On, January 9, 2007, Plaintiff told Dr. Ness that, while she had to do a rescue treatment in the last week, she continued with physical therapy and overall "still feels like she is progressively getting better."  *Id*. at 268.

By March of 2007, Plaintiff complained that physical therapy was not

working as well, but she wanted to continue with it before looking at other options.  Dr. Ness increased her Lortab dosage.  *Id*. at 279.  On May 30, 2007, Plaintiff decided to  explore other options as physical therapy was no longer helping her bladder pain get better.   Dr. Ness determined a deafferntation block was the best option and it would be performed as soon as possible, with a follow up in one or two weeks.  *Id*. at 280.  However, Plaintiff did not return to Dr. Ness until August 22, 2007, at which point she informed Dr. Ness that medications were helping her feel better and she "wanted to defer any procedural types of therapies if at all possible."  *Id*. at 282.

Almost five months passed before Plaintiff returned to Dr. Ness on January 16, 2008.  Dr. Ness noted that, as to daily functioning, Plaintiff was "not functioning at a very high level at this point because of the pain and urgency limitations."   (Tr. at 283.)   It was only then that Plaintiff determined she would resort to  procedural therapy, i.e., a deafferentation nerve block, which Dr. Ness performed on February 13, 2008.  The block immediately reduced Plaintiff's pain to a 0/10 and she was discharged in good condition.  *Id*. at 283-85.  However, her pain once again worsened to

a severe level and, on May 7, 2008, she had another deafferentation nerve block, and her pain again decreased to 0/10, although it did begin to return before she left the clinic.  Dr. Ness noted that Plaintiff would follow up in two weeks, and would call back in the next week if there had been no overall improvement in her condition.  *Id.* at 288-89.  Dr. Ness spoke with Plaintiff the following day, and she informed him that the pain had come back to "a very significant level."  *Id.* at 289.  There is no indication, however, as to whether Plaintiff followed up with an office visit prior to the ALJ's decision on June 20, 2008.

Importantly, while the ALJ stated that there are no records indicating Plaintiff sought treatment from Dr. Lloyd since 2006 (Tr. at 14), Dr. Ness's records from May 7, 2008, note that Plaintiff had been back to see Dr. Lloyd. *Id*. at 288.  According to Dr. Ness's notes, Dr. Lloyd offered to take out Plaintiff's bladder if other therapies did not work to control her symptoms. *Id*.  The ALJ failed to reference this portion of Dr. Ness's records, and it does not appear the ALJ attempted to verify whether Plaintiff actually sought treatment from Dr. Lloyd after 2006.  Given that the ALJ referenced Plaintiff's failure to seek treatment from her urologist  since 2006 no fewer

than three times throughout his opinion (Tr. at 14, 15, 16), this appears to be a significant oversight on the part of the ALJ.

Further, although the ALJ claimed Plaintiff reported to Dr. Lloyd in November 2006 that the bladder instillations were "providing satisfactory relief of her symptoms" (Tr. at 14, *see supra* p. 15), Dr. Lloyd's notes actually state that neither medication nor bladder instillations have provided Plaintiff with satisfactory relief, Plaintiff continued to have a good deal of pelvic pain, and she was voiding every thirty to ninety minutes. (Tr. at 250.) While the Court is not in a position to re-weigh the evidence, it is clear in this case that the ALJ may have overlooked some evidence and misstated portions of the record.

Although it is true that it is the plaintiff who bears the burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding her impairments[4], 20 C.F.R. §404.1512(e) provides as follows:

---

[4] *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Doughty v. Apfel*, 245 F.3d at 1278; 42 U.S.C. § 423(d)(5) ("[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require").

> [w]hen the evidence . . . from your treating physician . . . or other medical source is inadequate for us to determine whether you are disabled, we . . . will first recontact your treating physician . . . or other medical source to determine whether the additional information . . . is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source.

It is the opinion of this Court that the ALJ should have sought clarification from Dr. Lloyd given that the records originally obtained may not be complete. Had the full records been available, they may have shown that Plaintiff was seeking treatment from her urologist beyond what was indicated by the ALJ. Further, the ALJ clearly misstated at least some of the findings of Dr. Lloyd. Therefore, this Court is remanding the present case to the ALJ to further develop the record, specifically to ascertain whether Plaintiff sought further treatment from Dr. Lloyd, and, if so, obtain

his complete medical records with regard to Plaintiff.

## IV.   Conclusion.

Upon review of the administrative record, and considering all of Ms. Green's arguments, the Court finds that the ALJ's decision is not supported by substantial evidence.  For the foregoing reasons, the ALJ's denial of benefits is **vacated**, and the case is **remanded** to the ALJ for further proceedings consistent with this opinion.  A corresponding order will be entered contemporaneously with this Memorandum of Opinion.

Done this <u>30th</u> day of <u>September 2010</u>.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
**153671**